# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JENNIFER L. PARSON, individually and as an administrator of the Estate of MICHAEL BRADLEY PARSON, deceased, *Plaintiff*, v. ALLSTATE INSURANCE COMPANY, *Defendant*. | Case No. 1:24-cv-01493 Hon. John Robert Blakey |

### ALLSTATE INSURANCE COMPANY'S MOTION TO DISMISS COUNTS II-VI OF PLAINTIFF'S AMENDED COMPLAINT

Defendant Allstate Insurance Company ("Allstate") respectfully moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts II-VI of Plaintiff's Verified Amended Complaint for Damages (Dkt. 8) ("Am. Compl.").[1] In support of this motion, Allstate states as follows:

### INTRODUCTION

Plaintiff first filed her complaint against Allstate, along with one other plaintiff alleging separate claims against Allstate, on July 29, 2022, asserting claims for breach of contract and negligent infliction of emotional distress ("NIED"). Plaintiff then filed her first amended complaint, along with two other plaintiffs alleging separate claims against Allstate, on August 30, 2022, asserting the same claims for

---

[1] Pursuant to Judge Blakey's procedures, the parties have met and conferred about Allstate's motion. Plaintiff intends to oppose the motion.

breach of contract and NIED. (Dkt. 1.) Allstate moved to dismiss Plaintiff Parson's NIED claim and to sever the plaintiffs' claims. This Court granted Allstate's motion in its entirety on August 4, 2023. (Dkt. 2.) This Court dismissed Plaintiff's NIED claim because "[h]er symptoms of sleeplessness, anxiety, headaches, and nervousness do not meet the requirements to state a claim for negligent infliction of emotional distress." (*Id.*)

Despite this Court's dismissal of her NIED claim, over seven months later, on April 25, 2024, Plaintiff filed her amended complaint as individual and as an administrator of her husband's estate, reasserting the *same* NIED claim (Count V) based on the *same* factual allegations, but now under North Carolina law, rather than Illinois law. Plaintiff also reasserts her breach of contract claim (Count I) and brings new claims including a separate claim for breach of the implied covenant of good faith and fair dealing (Count II), a claim for intentional interference with prospective economic advantage (Count III), a claim for fraud (Count IV), and an unfair and deceptive trade practices act ("UDTPA") claim (Count VI).

Counts II-VI should be dismissed. Regarding Count II, North Carolina law bars independent claims of breach of the implied covenant of good faith and fair dealing where a contract governs the parties' relationship. Similarly, for Count VI, alleged conduct related to a mere breach of contract cannot sustain an unfair and deceptive trade practices act claim under North Carolina law. For Count III, Plaintiff fails to allege a contract would have ensued but for Allstate's alleged interference, as required to sustain a claim for tortious interference with prospective economic

advantage under North Carolina law. Regarding Count IV, Plaintiff fails to allege with sufficient particularity any fraudulent material omissions as required under Rule 9(b). Finally, regarding Count V, as this Court previously held, Plaintiff's alleged symptoms do not constitute severe emotional distress, as required for a NIED claim.

### I. Count II should be dismissed because Plaintiff cannot maintain a separate "good faith and fair dealing" claim.

Plaintiff's claim for the alleged breach of the covenant of good faith and fair dealing is duplicative of her breach of contract claim and should be dismissed. Plaintiff alleges that Allstate executed a contract known as R3001 Exclusive Agency Agreement and its integrated documents ("EA Agreement") with Plaintiff Parson's husband, Mr. Michael Parson. (Am. Compl. ¶¶ 1, 18.) Under the terms of the EA Agreement, Allstate had the sole discretion to approve or reject a buyer of Plaintiff's agencies. (*Id.* ¶ 24.) Plaintiff claims that, despite that exclusive right, Allstate abused its discretion in rejecting the sale of one of the agencies to third parties. (*Id.* ¶¶ 83-90.) Plaintiff also alleges that Allstate, while conducting its due diligence by requiring a court signed Letter of Testimony for Mrs. Parson's husband's will, refused to recognize Mrs. Parson as the legal representative of Mr. Parson's agency terminated the EA Agreement. (*Id.*) Plaintiff acknowledges that Allstate "had sole contractual discretion to approve or reject a buyer of Mr. Parson's agency." (*Id.* ¶ 83.) These factual allegations—Allstate's exercise of its contractual rights while verifying Plaintiff's legal authority to act on behalf of her husband's agency—form the basis for Plaintiff's claims for both breach of contract (Count I) and breach of the implied

covenant of good faith and fair dealing (Count II). (*Id.* ¶¶ 77-81 (Count I) and 83-90 (Count II).) Plaintiff claims that this action "arises under the common law of the State of North Carolina to redress contractual rights" and that North Carolina law applies. (Am. Compl. ¶ 5.)

Assuming that North Carolina law applies,[2] Count II fails. North Carolina does not recognize a stand-alone claim for breach of the implied covenant of good faith and fair dealing. *See Great Am. Emu Co., LLC v. E.J. McKernan Co.*, 509 F. Supp. 3d 528, 544 (E.D.N.C. 2020) (dismissing plaintiff's breach of implied covenant of good faith and fair dealing claim under North Carolina law, because "although plaintiff pleads a separate enumerated claim for breach of implied covenant of good faith and fair dealing, this is not a claim that can exist independently of a breach of contract claim"); *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enterprises, Inc.*, 505 F. Supp. 3d 570, 585 (M.D.N.C. 2020) (dismissing the plaintiff's separate cause

---

[2] Allstate takes no position as to whether North Carolina law applies to this dispute. But assuming that it does, as Plaintiff alleges, Count I fails under North Carolina law. Regardless, the same result would be found under Illinois law, because Illinois does not recognize a breach of the covenant of good faith and fair dealing as an independent cause of action. *See Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992) ("[U]nder Illinois law, the covenant of good faith and fair dealing has never been an independent source of duties for the parties to a contract."); *Lagen v. United Cont'l Holdings, Inc.*, 920 F. Supp. 2d 912, 918 (N.D. Ill. 2013) ("While under Illinois law every contract contains the implied covenant of good faith and fair dealing, it is 'not generally recognized as an independent source of duties giving rise to a cause of action.'"); *Aggarwal v. Nokia Corp. (In re Wireless Tel. 911 Calls Litig.)*, 2005 WL 1564978, at *13 (N.D. Ill. June 3, 2005) (dismissing claim for breach of implied covenant of good faith and fair dealing where "[p]laintiffs have already asserted a separate breach of contract claim" and where a claim for breach of the implied covenant is rendered "superfluous").

of action for breach of the covenant of good faith and fair dealing as duplicative of its breach of contract claim under North Carolina law, reasoning "where the claim for breach of good faith is 'part and parcel' of a similar claim for breach of contract, the good faith claim is not to be pursued independently from the breach of contract claim") (citations omitted); *BioSignia, Inc. v. Life Line Screening of Am., Ltd.*, No. 1:12CV1129, 2014 WL 2968139, at *5 (M.D.N.C. July 1, 2014) (dismissing plaintiff's separate cause of action for breach of the covenant of good faith and fair dealing "as duplicative of its breach of contract claim" because "Plaintiff's allegations of breach of the duty of good faith and fair dealing center on alleged breaches of express contract terms, these claims rise and fall with the underlying claims for breach of contract") (citation omitted). Because Plaintiff's claim for a breach of the implied covenant is based on the same conduct and duties as her breach of contract claim (*compare* Am. Compl. ¶¶ 77-81, *with* Am. Compl. ¶¶ 83-90), Count II should be dismissed.

Further, amending the Complaint a third time to recast Count II as a new basis for Plaintiff's breach of contract claim would be futile because a defendant cannot be held to have breached the covenant of good faith and fair dealing for simply exercising its contractual right. *See Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, No. 12 CVS 5505, 2014 WL 1878885, at *15 (N.C. Super. May 7, 2014), *aff'd*, 245 N.C. App. 378, 781 S.E.2d 889 (2016) ("A breach of good faith and fair dealing claim 'cannot be used to contradict the express terms of a contract.'") (citing *Rezapour v. Earthlog Equity Grp., Inc.*, No. 5:12CV105-RLV, 2013 WL 3326026, at *4 (W.D.N.C. July 1, 2013)); *JTG Equip. & Supply, LLC v. EBay, Inc.*, No. 14 CVS 8822,

2015 WL 303589, at *5 (N.C. Super. Jan. 23, 2015) ("Courts will not apply an implied covenant of good faith and fair dealing to override the express terms of a contract.").[3] As Plaintiff alleges, under the EA Agreement, Allstate had sole discretion to approve or reject the sale of Mr. Parson's agency. (Am. Compl. ¶¶ 24, 83.) Thus, Allstate's exercise of its express contractual rights cannot be a breach of "bad faith" or otherwise. Count II must be dismissed.

## II. Count VI should be dismissed because the express contract terms govern Allstate's alleged conduct.

Plaintiff also cannot maintain a claim under the North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA") based an alleged breach of the EA Agreement. In Count VI, Plaintiff alleges that "Allstate interfered in the sale of Mr. Parson's agency" in purported violation of the "express contract terms of the EA Agreement" which "specify that each EA's economic interest in the book of business includes the right for EAs to sell their economic interest to an approved buyer." (Am. Compl. ¶ 121.) She further alleges that this conduct—the alleged breach of the EA Agreement—constitutes "unfair and deceptive trade practices" under North Carolina law. (Am. Compl. ¶¶121-124.)

Plaintiff cannot pursue a UDTPA claim based on these allegations. "Under

---

[3] Again, the same result would occur if Illinois law applied. *See Cromeens, Holloman, Silbert, Inc. v. AB Volvo*, 349 F.3d 376, 396 (7th Cir. 2003) (holding a defendant "cannot be held to have breached the covenant of good faith and fair dealing for simply enforcing the contracts as written."); *McDonald's Corp. v. C.B. Mgmt. Co.*, 13 F. Supp. 2d 705, 712-713 (N.D. Ill. 1998) (no bad faith where the terms of the agreement gave the right to terminate for failure to comply with his contractual obligations).

North Carolina law, a mere breach of a contract cannot sustain a UDTPA claim without a showing of 'substantial aggravating circumstances.'" *BioSignia, Inc. v. Life Line Screening of Am., Ltd.*, No. 1:12CV1129, 2014 WL 2968139, at *6 (M.D.N.C. July 1, 2014) (citing *Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 217, 646 S.E.2d 550, 558 (2007)). "Even an intentional breach of contract does not fall within the purview of [a UDTPA claim]." *Id.* (citing *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006)).

Plaintiff bases her UDTPA claim on the allegation that Allstate violated the "express contract terms of the EA Agreement" by interfering in the sale of the agency. (Am. Compl. ¶ 121.) Allstate's alleged interference with the contractual right to sell agencies is the *same* basis for Plaintiff's breach of contract claim. (Am. Compl. ¶ 80.) Plaintiff does not (and cannot) allege further "substantial aggravating circumstances" in Count VI. Because Count VI is based on the same conduct forming Plaintiff's breach of contract claim, it must be dismissed. *See BioSignia, Inc.* at *6 (finding that a plaintiff cannot "piggyback" a UDTPA claim on a contract claim) (citing *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir.1998)); *see also Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 788 (4th Cir. 2012) (affirming dismissal of the UDTPA claim where allegations simply re-couch the breach of contract claims); *Stack v. Abbott Lab'ys, Inc.*, 979 F. Supp. 2d 658, 669 (M.D.N.C. 2013) (dismissing UDTPA claim even where complaint alleged the contract-violative conduct was committed "deliberately and in bad faith" because "such conduct was nevertheless within the contemplation of the parties when they crafted their contract . . . [and]

[t]he claim is therefore one of contract interpretation and performance, which North Carolina courts relegate to the arena of contract law, and not the stuff of treble damage awards").[4]

### III. Count III should be dismissed because a contract would not have ensued but for Allstate's alleged interference.

Plaintiff fails to state a claim for tortious interference with prospective economic advantage. To state a claim for tortious interference with prospective economic advantage under North Carolina law, a plaintiff "must allege facts to show that the defendants acted without justification in 'inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference' and that the defendants' conduct proximately caused 'measurable damages.'" *Superior Performers, Inc. v. Phelps*, 154 F. Supp. 3d 237, 250 (M.D.N.C. 2016) (quoting *Walker v. Sloan*, 137 N.C. App. 387, 393, 394, 529 S.E.2d 236, 242 (2000)). Plaintiff merely alleges that she expected to enter a contract for the sale of Mr. Parson's agency. (Am. Compl. ¶ 93.) However, even a "well-founded" expectation is insufficient to state a claim for tortious interference with prospective economic advantage. Rather, Plaintiff must allege that a contract would have been entered but for Defendant's wrongful interference. *Superior Performers, Inc.* 154 F. Supp. 3d 237

---

[4] Again, the same result would occur if Plaintiff pursued a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act. *See Greenberger v. GEICO Gen. Ins. Co.,* 631 F.3d 392, 399 (7th Cir. 2011) (finding that when Illinois Consumer Fraud and Deceptive Trade Practices Act claims "arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract").

at 250 ((holding plaintiff failed to state a claim for tortious interference with current or prospective business relations because plaintiff failed to allege facts showing a third-party would have entered into a contract with plaintiff but of defendants' actions); *Tucker Auto-Mation of N. Carolina, LLC v. Russell Rutledge & Rutledge Com., LLC*, No. 1:15-CV-893, 2017 WL 2930926, at *3 (M.D.N.C. July 10, 2017) (holding plaintiff's allegations were insufficient to support a claim of tortious interference with prospective economic advantage under North Carolina law, because plaintiff failed to sufficiently allege that a contract would have resulted with a third party but for defendants' tortious interference, rather "at best" they revealed an expectation of business, but a "mere expectation" is insufficient to support the claim) (citing *Beverage Sys. of the Carolinas, LLC v. Assocs. Bev. Repair, LLC*, 368 N.C. 693, 701, 784 S.E.2d 457, 463 (2016)); *L. Offs. of Matthew K. Rogers, PLLC v. Fisher*, 273 N.C. App. 495, 847 S.E.2d 82 (2020) ("speculation regarding future economic advantage does not satisfy the causation requirement of the [tortious interference with prospective economic advantage] claim").

Plaintiff has not and could not allege facts showing Art and Gigi Stover or any other potential buyer would have entered a contract for the sale of Mr. Parson's agency because Allstate must approve the buyer and "Allstate is allowed broad discretion in approving or denying sales." (Am. Compl. ¶ 24.) Plaintiff does not identify any potential buyer who Allstate approved for the sale of Mr. Parson's agency. Therefore, plaintiff cannot demonstrate that but for Allstate's alleged interference a contract would have ensued, as required to state a claim. *Aym Techs.,*

*LLC v. Rodgers*, No. 16 CVS 21788, 2018 WL 817084, at *18 (N.C. Super. Feb. 9, 2018 (holding plaintiff's failure to plead "but for" causation is "fatal" to its claim).[5] Count III must be dismissed.

### IV. Count IV should be dismissed because Plaintiff failed to allege any fraudulent omissions with requisite particularity.

Rule 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Fed.R.Civ.P. 9(b). Plaintiff fails to allege with particularity the details of the alleged fraudulent omission, as required by Rule 9(b). "In order to comply with the pleading requirements of Rule 9(b) with respect to fraud by omission, a plaintiff usually will be required to allege the following with reasonable particularity: (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance." *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189 (M.D.N.C. 1997) (applying North Carolina law). Plaintiff fails to

---

[5] The same result occurs if Illinois law applies. *See Grako v. Bill Walsh Chevrolet-Cadillac, Inc.*, 2023 IL App (3d) 220324, ¶ 53, 229 N.E.3d 869, 880–81 (causation element of intentional interference with prospective economic advantage requires a "but-for" analysis).

allege sufficient facts to establish several of these elements.

Plaintiff's sparse factual allegations fail to show the relationship or situation giving rise to a duty to speak. Plaintiff does not allege that FSL Means represented that she knew the appropriate procedure or documentation required for legal representatives of an agency. Plaintiff only alleges that *she* understood FSL Means could provide appropriate advice on how to become the legal representative of Mr. Parson's agency. She does not allege why she had such an understanding or how any Allstate representative gave her such an understanding. (Am. Compl. ¶¶ 104-105 (alleging that Plaintiff met with FSL Means because *Plaintiff* "understood that FSL Means would be able to appropriately advise Mrs. Parson on the procedure Mrs. Parson should follow to preserve Mr. Parson's interest in his agency" and "Allstate, through FSL Means and other representatives, concealed from Mrs. Parson there was additional specific documentation to be completed by Mr. Parson prior to his passing for Mrs. Parson to be recognized as the legal representative of his agency.")) That is insufficient to establish that element of the claim. *See Breeden,* 171 F.R.D. at 196 (holding plaintiff failed to allege a duty to speak where plaintiff failed to allege the source of the purported duty or any factual basis supporting imposition of such duty ); *Dash BPO, LLC v. Lindberg*, No. 5:20-CV-625-FL, 2022 WL 107106, at *6 (E.D.N.C. Jan. 11, 2022) (dismissing fraudulent concealment claim where the plaintiff did not allege, must less with specificity, in what manner the provision of information placed defendant in a position of influence an superiority over plaintiff such that defendant owed plaintiff a special duty to speak).

Furthermore, Plaintiff fails to allege the event or events triggering the duty to speak. For example, Plaintiff does not allege whether she told FSL what documentation she had regarding her right as the legal representative nor did she allege that she asked FSL what documentation was required. Without such details, it is far from plausible that Allstate intentionally fraudulently concealed that there was "additional specific documentation" required because "mere silence is not enough to establish fraudulent concealment." *Wilson Land Corp. v. Smith Barney Inc.*, No. 5:97-CV-519-BR(2), 1999 WL 1939270, at *12 (E.D.N.C. May 17, 1999) (holding plaintiff's fraudulent concealment claim failed because "there must be some active effort to conceal" and plaintiff failed to allege any facts indicating how the information was false or misleading); *see also Kasparov, PTE LTD v. Zacherl*, No. 5:22-CV-503-D, 2023 WL 4752376, at *12 (E.D.N.C. July 25, 2023) (where messages were not fraudulent on their face and the plaintiff did not specify how they were fraudulent, the court found that the plaintiff asked "the court to read far too much into these three messages beyond a simple promise" and "failed to allege with sufficient particularity any fraudulent material omissions.").

Finally, Plaintiff bases her fraud claim on facts alleged "on information and belief." (Am. Compl. p. 5 (stating that *all* facts in the Amended Complaint are alleged "upon information and belief"); *see also* ¶¶ 106-107 and 109 (alleging specific facts supporting the fraud claim "on information and belief"). "[A] plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. V.*

*Walgreen Co.*, 631 F.3d 436, 442–43 (7th Cir. 2011). Nor does she allege why facts pled on information and belief were not accessible to her or the grounds for her suspicions. *Id*. For these reasons, Count IV must be dismissed.[6]

### V. Count V should be dismissed because Plaintiff's alleged symptoms do not constitute severe emotional distress.

Plaintiff's renewed NIED claim is devoid of sufficient facts to support the element of severe emotional distress. Under North Carolina law, "to state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). "In this context, the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id*. The North Carolina Supreme Court made clear that a plaintiff may not recover damages for "mere fright or temporary anxiety not amounting to severe emotional distress." *Id*. at 304.

In Plaintiff's first amended complaint, Plaintiff alleged that, due to Allstate's

---

[6] Once again, the same result occurs if Illinois law were to apply. *See Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1041 (N.D. Ill. 2007) (dismissing Illinois fraud claim for failure to meet Rule 9(b)'s heightened pleading standard).

purported delay in recognizing her as the legal representative of her husband's agency, she "sustained severe emotional distress regarding her ability to sell the agency and financially provide for her two young children, which manifested itself in sleeplessness, headaches, nervousness and anxiety." (Dkt. 1 at ¶ 181.) This Court found that these alleged symptoms do not meet the requirements to state a claim for negligent infliction of emotional distress and dismissed the claim.

Plaintiff now attempts to reassert a NIED claim with even *fewer* allegations regarding her distress and its purported severity. Plaintiff alleges again that because of Allstate's alleged lack of time-sensitivity, she suffered "severe distress while grieving her husband." (Am. Compl. ¶ 115.) She fails to allege any symptoms whatsoever. She merely alleges that her distress was "severe." (*Id.*) This is not sufficient to state a claim for NIED under North Carolina law because it is not a "*severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so" such as "neurosis, psychosis, chronic depression, [or] phobia." *Johnson*, 327 N.C. at 304, 395 S.E.2d at 97 (emphasis added).

Because the *Johnson* definition mandates that plaintiffs demonstrate a "severe and disabling" condition, courts applying North Carolina law routinely dismiss NIED claims with similarly sparse allegations. *See e.g. Piro v. McKeever*, 245 N.C. App. 412, 419, 782 S.E.2d 367, 373, *aff'd*, 369 N.C. 291, 794 S.E.2d 501 (2016) (affirming dismissal of NIED claim where "plaintiff has not shown that he suffered from severe emotional distress (neurosis, psychosis, chronic depression, phobia, or

any other type of severe and disabling emotional or mental condition)"); *Swaim v. Westchester Acad., Inc.*, 170 F. Supp. 2d 580, 585 (M.D.N.C. 2001) (dismissing plaintiff's NIED claim where plaintiff's "exceedingly sparse allegations" do not allow an inference that he suffered severe emotional distress); *Wilson v. Nash Edgecombe Econ. Dev., Inc.*, No. 5:19-CV-322-FL, 2020 WL 5594538, at *19 (E.D.N.C. Sept. 18, 2020) (dismissing NIED claim where plaintiff failed "to allege extreme and outrageous conduct that exceeds all bounds of decency."); *Lineberger v. Newton Police Dep't*, No. 514CV00137RLVDCK, 2016 WL 5376290, at *4 (W.D.N.C. Sept. 23, 2016) (dismissing NIED claim where the alleged emotions constituted "neither a diagnosable emotional or mental disorder nor a mental state comparable to the mental conditions identified in *Johnson*'s definition of the phrase 'severe emotional distress'").

As this Court has already determined, Plaintiff's allegations fall short of "severe emotion distress." Therefore, Count V must be dismissed.[7]

## CONCLUSION

For the aforementioned reasons, Allstate respectfully requests that this Court dismiss Counts II-VI of Plaintiffs' Complaint with prejudice. Allstate further requests any additional relief that this Court deems just and appropriate.

---

[7] Again, the same result would occur if Illinois law applied. *See Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 821 (N.D. Ill. 2016) (Castillo, J.). *aff'd*, 845 F.3d 802 (7th Cir. 2017) (disrupted sleep patterns, headaches, mental anguish, depression, and anxiety do not meet the requirements of contemporaneous physical impact for negligent infliction of emotional distress claims).

Dated: May 23, 2024

Respectfully submitted,

*/s/ John K. Theis*
John K. Theis
Ariel Wilson
Michelle Conklin
R<small>ILEY</small> S<small>AFER</small> H<small>OLMES</small> & C<small>ANCILA</small> <small>LLP</small>
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone:   312.471.8700
jtheis@rshc-law.com
awilson@rshc-law.com

*Counsel for Allstate Insurance Company*